New-Haven,
July,
1820.

July 12.

FOWLER *against* FOWLER.

In *April*, 1800, *A.* and *B.* sons of *C.* entered into a mutual contract, wherein *A.* stipulated, that he would convey to *B.* his expected share of his father's estate, and in satisfaction, *B.* agreed to give *A.* certain personal security, or to convey to him certain lands, and executed a bond conditioned for the performance of the contract, on his part. In pursuance of this arrangement, *C.*, in *June* following, conveyed to *B.* *A.'s.* share of his, *C.'s.*, estate. *B.*, having failed to give the personal security stipulated, in *September*, 1802, tendered to *A.* deeds of lands mentioned in the bond ; which *A* refused to accept. *B.* then left the deeds in the hands of *D.*, there to remain until called for. In *June*, 1806, *B.*, claiming that he had fulfilled the condition of the bond, by the tender of the deeds, demanded the bond of *A.*, who delivered it up to him, declaring, at the same time, that he never would accept of the deeds, nor have the property therein described, and that he made a *present* of the bond to the defendant. *B.* destroyed the bond, and immediately afterwards, without the knowledge of *A.*, applied to *D.*, and took up the deeds deposited with him. Two or three days afterwards, *A.* demanded the deeds of *D.* ; and at a subsequent period, particularly in *November*, 1817, he demanded them of the defendant ; previous to which time the principal part of the lands described in the deeds, had been sold by *B.*, with the knowledge of *A.* *C.* being dead, and *B.* having made no satisfaction to *A.* for his share of *C.'s.* estate, otherwise than by such tender of the deeds, *A.* exhibited his bill in chancery against *B.*, praying for relief. Held, that on the conveyance of *A's.* share in *C.'s.* estate to *B.*, *A.* had a complete right to the fulfilment of the contract on the part of *B.* ; that by the tender of the deeds, and the deposit of them with *D.*, *B.* fulfilled his part of the contract, and *A.* had a vested right to the deeds, although the title to the lands did not then pass to *A.*, for want of his assent ; that *A's.* giving up the bond, on the ground that *B.* had fulfilled the contract, was an implied delivery, and a virtual acceptance, of the deeds ; that the subsequent surreptitious resumption of the deeds, by *B.*, was fraudulent ; and that *A.*, therefore, was entitled to a decree in his favour, for a conveyance of the stipulated lands, or payment of the value of them, with the rents and profits since 1806.

THIS was a bill in chancery, brought by *Edmund R. Fowler* against *Reuben R. Fowler*, children and heirs at law of *Caleb Fowler*, deceased.

On the 14th of *April*, 1800, the plaintiff executed and delivered to the defendant the following contract : " Know all men, that I, *Edmund R. Fowler*, do covenant, obligate and agree with my brother, *Reuben R. Fowler*, that I will convey to him my proportion of our honoured father's estate, real and personal, also the interest in 80*l.* that my brother received at the age of twenty-three years, also my proportion for my labour done for our father since I was twenty-two years of age, and the cash I have paid our father since that time, and agree

*t*o take of my said brother *Reuben* therefor, obligations execu-
ted by good responsible men, assigned over to me, payable in
three years, in three equal and annual instalments, with inter-
est ; and in order to secure the payment of said obligations,
I will take a mortgage of a part of the homestead sufficient to
secure the same ; or, I will, for the whole of the above descri-
bed property, take the house and store in *Stephentown*, with
the appurtenances, and whatever belongs to my said brother,
being property that he purchased of Col. *Jonathan Niles*, and
also a quit-claim deed of one or two thousand acres of *Susque-
hannah* land in the *Connecticut* company's purchase, as I shall
think just and equitable after our honoured father's estate is
appraised, and those two pieces of property shall be to me a
compensation in full for my proportion of our father's estate.
And it is considered and understood, that if I take a mortgage
of part of said homestead, it is to be subject to a lease to our
father during his life.   It is also understood and considered,
that provided I receive my proportion of our father's estate
agreeably to the first of the aforesaid proposals, I am to take
my proportion of the household furniture, and of all other
property, that my said brother *Reuben*, in his contract with my
brother *Ozias* and our sisters did not agree to take of them,
or I will let it go to those who will give the highest price.
Witness my hand in *Durham*, this 14th day of *April*, 1800.

  [Signed.]      *Edmund R. Fowler.*"

At the same time, the defendant executed and delivered
to the plaintiff his bond, for the sum of 265*l.* 11*s.* 3*d.*, with a
condition annexed, that it should be void, if the defendant ful-
filled said contract, on his part, by making payment to the
plaintiff for the property therein mentioned, in the manner
therein stipulated.   On the 4th of *June* following, *Caleb Fow-
ler*, the father, by the consent, and at the request of the par-
ties, conveyed to the defendant, by deed duly executed, all
that share of his, the grantor's, estate, to which, by his will,
the plaintiff would have been entitled ; the appraised value
of which was 265*l.* 11*s.* 3*d.*   In consequence of said contract,
and the fulfilment thereof, in this manner, on the plaintiff's,
part, he has been divested of all title to any part of the estate
of his father, who has since died ; and the share to which he
would otherwise have been entitled, became vested in, and
has ever since been enjoyed by, the defendant, or his assignees.
The defendant has never paid the plaintiff the amount of his

*Fowler*
*v.*
*Fowler.*

bond, nor delivered to the plaintiff any notes or security ; but on the 10th of *September*, 1802, the defendant offered and tendered to the plaintiff, in fulfilment of said contract on his part, and of the condition of the bond, a deed from him to the plaintiff, duly executed, thereby conveying to the plaintiff the house, store and land in *Stephentown*, and a like deed of the *Susquehannah* land ; which the plaintiff refused to accept. The defendant then left them in the hands of *Dan Parmelee*, Esq. of *Durham*, to remain in his hands until called for. On the 10th of *June*, 1806, the defendant demanded of the plaintiff the bond, claiming, that he had fulfilled the condition of it, by the conveyance so made and tendered by him ; and thereupon the plaintiff delivered it up to him, to be cancelled, declaring to the defendant, at the same time, that he would never accept of the deeds, nor have the property therein described, and that he made a present of the bond to the defendant. Immediately afterwards, the defendant, without the consent or knowledge of the plaintiff, applied to *Parmelee*, and took up and carried away the deeds so left with him ; and has ever since retained them. Two or three days afterwards, the plaintiff applied to *Parmelee* for them, and demanded them of him ; and has since demanded them of the defendant, particularly, in *November*, 1817 ; but the defendant refused, and still refuses, to deliver them to him. The defendant has never paid the plaintiff for the estate, which he received, in any other manner than by the tender of the conveyances, as before stated. Before the plaintiff demanded of the defendant a deed of the *Stephentown* place, it had been sold, by the defendant, with the plaintiff's knowledge.

*Baldwin* and *Staples*, for the plaintiff, contended, That he was entitled to a decree for the lands specified in the deeds, or the value of them. By the tender of the deeds, in fulfilment of the condition of the defendant's bond, the title to them vested in the plaintiff, and the defendant could rightfully demand his bond to be cancelled. *Alcorn* exr. v. *Westbrook*, 1 *Wils.* 115. *Coit* & al. v. *Houston*, 3 *Johns. Ca.* 243. The property of any collateral article, tendered in discharge of a contract, vests in the person to whom it is tendered ; he having fulfilled the contract, on his part, or paid the consideration. *Co. Litt.* 207. *Nichols* & al. v. *Whiting*, 1 *Root* 443. 1 *Swift's Syst.* 404. It follows, that the deposit with *Parmelee, until*

*called for*, was for the use, and subject to the call, of the plain-tiff.

The plaintiff had a right to complete his title to the lands, at any unlimited time, by assenting to take the lands, and by receiving his deeds. As the defendant had received his pay for the lands, he could suffer no injury by the delay.

In 1806, the plaintiff *did* virtually assent to take the lands, by giving up to the defendant his bond to be cancelled, on the ground that it was satisfied by the tender. Immediately afterwards, the plaintiff demanded the deeds of *Parmelee*.

The defendant rendered himself liable, by fraudulently withdrawing the deeds, after cancelling his bond ; thus defeating the title of the plaintiff to the land, and his remedy on the bond.

Lapse of time, in a case like this, in which the facts are placed beyond controversy, is no defence. A man can never avail himself of it, to cover a fraud.

*Daggett* and *N. Smith,* for the defendant, contended, That the plaintiff's refusing to accept the deeds, and voluntarily delivering up the bond to the defendant to be cancelled, and declaring, at all times, that he would never accept the deeds, nor have the property, until after the *Stephentown* place was sold, destroyed all claim in his favour for that property. They particularly insisted,

1. That the title did not vest in the plaintiff, upon the tender ; and as he refused to accept the deeds, he acquired no rights, in consequence of the tender. The deeds were left with *Parmelee* to keep for the defendant.

2. That if the plaintiff had been disposed afterwards to take the deeds, it was his duty to demand them of the defendant ; and, upon refusal, his remedy would have been upon the bond. But as he has voluntarily delivered up the bond to be cancelled, he has lost all remedy.

3. That the conduct of the plaintiff in declaring that he would not accept the property, thereby inducing the defendant to sell, will be a fraud upon him, if the plaintiff can now claim it, and subject him for the value of it in money.

4. That the conduct of the plaintiff amounted to a *waiver*, by him, of performance of the contract, on the part of the defendant.

New Haven,
July,
1820.

Fowler.
v.
Fowler.

5. That the plaintiffs' demand is a *stale* one ; and a court of chancery will now take him at his word. He has out-staid his time for the relief he seeks.

HOSMER, Ch. J. In the year 1800, a mutual contract was made between the parties to the present bill, wherein the plaintiff stipulated, that he would convey to the defendant his share, as heir apparent in his father's estate, at appraisal ; and in satisfaction, the defendant agreed to give his own or assigned notes, with security, or to transfer by deed land at *Stephentown*, and in the *Susquehannah* purchase. To secure the plaintiff, the defendant gave his bond, with condition, obliging himself to perform the above agreement. The plaintiff's interest in his father's estate was duly appraised ; and, on his request, in *June*, 1800, his father conveyed to the defendant the land stipulated, in full execution of the plaintiff's contract. From this moment he had a complete right to the fulfilment of the contract, on the part of the defendant.

In *September*, 1802, the defendant, in execution of his engagement, tendered to the plaintiff valid deeds of the land at *Stephentown*, and in the *Susquehannah*, which the plaintiff refused to receive ; upon which, the deeds were deposited, by the defendant, with *Dan Parmelee*, Esq. to *keep until called for*. The effect of this act, on the part of the defendant, was performance of his engagement, and on the part of the plaintiff, a vested right to the deeds. The lands did not pass, by reason of the plaintiff's refusal to accept the deeds ; but his right to the deeds, notwithstanding, was indisputable ; and whenever he chose, he might call and take them. This assertion I found, first, on the nature of the transaction, and the apparent intention of the defendant. He meant to perform his agreement, and to protect himself against a future demand ; and hence, the deeds were deposited, surely not for his own use, but for the use of the plaintiff, until he should consent to receive them. Secondly, I consider this to be the operation of law on the facts stated. On this point I forbear to dwell further, because the subsequent transactions between the parties clear the case of all difficulties.

In the year 1806, every thing remained in *statu quo* ; particularly, the deeds still were in the hand of *Parmelee*, under the terms of the deposit, and unresumed, by the defendant. At this period, the defendant demanded the bond he had giv-

en to the plaintiff, and what is a very material fact, *on the ground of his having fulfilled his contract.* The plaintiff delivered to the defendant the bond, and, by unquestionable inference, *on the same ground.* Here let us pause. The facts before-mentioned being all within the knowledge of both parties, the claim of the bond, on the above principle, speaks this language. " I have performed the contract, on my part, by the tender of the deeds, now remaining in the hands of *Parmelee,* for your use. Go, and receive them ; but my written agreement I have fully executed, and I request you to deliver it." This request was immediately complied with, and the effect of the transaction was an implied delivery of the deeds ; the plaintiff virtually accepting them, by giving up the bond. Nor is there any conceivable difference between the consequence resulting from the preceding facts, and the original delivery of the deeds to a stranger for the plaintiff's use. In either event, the plaintiff not dissenting, the lands would become his. *Shep. Touch.* 57, 8. On this view of the case, the surreptitious resumption of the deeds, by the defendant, was fraudulent.

Several objections have been proposed, to each of which I will distinctly reply.

In the first place, it is said, when the bond was delivered up by the plaintiff, he declared, that he made a *present* of it to the defendant. If such words were spoken, it must be remembered, that, at the same time, the defendant delivered the deeds to the plaintiff; and the giving of the bond implies no refusal to receive the deeds.

Secondly, the plaintiff often asserted, that he would never receive the land at *Stephentown ;* and this amounts to a *waiver* of the contract. This is legally impossible. If waived or rescided, it must be so on both sides ; and the defendant, by the sole act of his brother, would be deprived of the estate conveyed to him by his father. *Hunt* v. *Silk,* 5 *East,* 451.

Thirdly, the demand, it is said, is *stale,* and the lapse of time which has intervened, precludes the inference of chancery. The answer is obvious, and conclusive. The demand is far from being ancient. The fraud was committed in 1806, and the demand, on the part of the plaintiff, was made in 1817 ; a period only of eleven years. Besides, the court have the best possible evidence, that the claim of the plaintiff is equitable. The defendant admits he has never performed his en-

Fowler
*v.*
Fowler.

gagement ; and the determination against him is founded on his own representation.

Fourthly, the sale of the property, by the defendant, before the plaintiff's demand of the deeds, constitutes the last objection. This, in effect, is an argument founded ultimately on the defendant's own wrong. It is no hardship which ought to be regarded with a very favourable eye, that the fraud of the defendant is followed by consequences unexpected and severe. But even the seeming inconvenience may be avoided, by the manner of the decree. If the defendant cannot convey to the plaintiff the land at *Stephentown*, he may *pay* for it ; and this is just and reasonable.

I am of opinion, that the bill of the plaintiff ought to be granted, and the defendant decreed to convey to him the land, and pay the rents and profits from 1806 ; or that he pay the value of the land, at that period, with the rents and profits since.

PETERS, CHAPMAN and BRAINARD, Js. were of the same opinion.

BRISTOL, J. dissented.

Decree for the plaintiff accordingly.